Let's call our third case, which is 20-2073 United States v. Maley. Ms. Keeble, you may proceed when you're ready. Thank you, Your Honor. May it please the Court, Counsel. My name is Shira Keeble. I'm an Assistant Federal Public Defender in Denver, and I represent Matthew Maley in this appeal. Mr. Maley returns to this court because his New Mexico trial lawyers should have filed what was a meritorious motion to suppress. His other lawyers investigated the same— On what basis would it have been meritorious? They had a warrant. They had the right to at least go in and see if he was in there, and the gun was in plain sight. It was the subject of this particular issue. So what good would a motion to suppress have done in that situation? Judge Kelly, my argument is that they were not allowed to go into the trailer. Because they had— I didn't understand what you said then. I'm sorry. Can you hear me? I can hear you, but you went so fast, you blew over the word. My argument is that they were not allowed to go into the trailer. They had an arrest warrant, but no search warrant. And with an arrest warrant, you need probable cause to believe that someone is inside, which they did not have in this case. Well, isn't that a—go ahead. I'm sorry. Go ahead. In considering what they needed in order to go inside the trailer, are we looking at Ninth Circuit law or Tenth Circuit law? Your Honor, our position is that you look at Ninth Circuit law. That's what every federal court to have reached this question has decided, that Lex Loki, principle of choice of law, is what governs here, and that Lex Loki applies. We think we went under either standard. I would also note that the government only argues that there was no probable cause in this case and doesn't give any reason not to adopt the Lex Loki standard. So the issue before us is whether they had— well, I guess it's not the only issue before us, but one of the issues is whether they had probable cause to enter the trailer, and that would require them to believe he was in the trailer. That's right, Your Honor, at that moment. And they had no reason to think that anyone was inside the trailer, and they had no reason to think that Mr. Maley was on the property at all. The police had never seen— His truck was there. His kid hollered out to warn somebody somewhere in that immediate vicinity. It seems to me that under Payton v. New York, it implicitly carries with it the limited authority to enter to see if he's there. I think if they have probable cause, then they do have that authority to enter. That's what Payton says. The only car— They had an arrest warrant. Yes, and that's what they had in Payton as well, and Payton says if you have probable cause to believe that the person is currently inside the residence, then you may enter. The problem here is they've never seen him in that truck. The only vehicle they've ever seen him in is a green Land Rover that's not present on the property. There's no indication that anyone is inside the travel trailer. There's no signs of human life. In contrast, say, to U.S. v. Denson, there's no— No, they were down. The steps were down. It was hooked up to the utilities, and the son called out a warning. Why isn't that— Why isn't it just plain as can be that he could have been hiding under the table in there? Your Honor, the— He wasn't. He wasn't, and so they— But the gun was in plain view, so no harm, no foul. And, Your Honor, every residence is going to be usable as a residence, so the fact that the stairs were down and the utilities were connected is not relevant here, in the same way that if the police came to my house and saw that my utilities were connected and that my stairs were in working order, that wouldn't give them any further reason to believe that I was currently at home. Let me ask you, would you admit that this is a close question on whether there's probable cause here to enter? I mean, the kids were yelling at someone, and there was no one in the other trailer. I understand the superficial appeal of relying on that shout, and the reason that it appeals is because it's actually the only fact that the government has. If it's not cut and dried, couldn't— I mean, don't we have to defer to the attorney's decision, their professional decision whether or not to bring this motion under Strickland? Because all of this is under Strickland, right? And, Your Honor, I have two answers to that. The first is, no court has ever done that. The government hasn't identified one. I have not found one where there was a meritorious motion to suppress, where it was prejudicial for failing to file it, and where the court has nonetheless said no ineffective assistance of counsel. But the second thing that's important here— But my premise was not that it's meritorious. My premise was that it's a close call. And, Your Honor, I think it— Peyton says—excuse me, not Peyton—Kimmelman says that it does need to be meritorious. I think meritorious includes close calls. The dictionary definition of meritorious specifically says that likely to succeed on the merits. In terms of whether you could defer to the lawyers in this case, you cannot defer to the lawyers in this case. And that's because even at the time of trial— One other question. Why was there a follow-up case in Arizona when it looked like it was over in New Mexico? Can you explain that to me? I think you'll have to ask the government that question, Judge Tinkovich. My understanding is that the only charges in Arizona were based on items discovered in the travel trailer. The reason that they have this overlap is because the firearms, although they had been found in the travel trailer in Arizona, there was one witness who says she saw him with certain guns in New Mexico. Whether there would have been a double jeopardy violation at some point, if they tried to proceed on that charge, I don't know the answer to that, probably. Back, Your Honor, Judge McHugh, to your question. At the time of trial, these trial lawyers, who had not believed that they were going to be the trial lawyers in this case until they were told they would be a week before, which was months after the motions deadline had passed. At trial, they didn't know the basic facts about this search. So even in a close case, if a court could defer to strategic decisions by lawyers, you cannot make a strategic decision about whether or not to file a motion if you haven't investigated that motion. You haven't read the search warrant application. You don't know what was found in the travel trailer. And it wasn't even agreed between the parties whether one of the charged guns was in plain view until about a week before what was supposed to be a hearing in the 2255 case. So the trial lawyers could not have drawn that conclusion. There have been a couple questions about these shouts by the sons. I do want to address that. What I was saying is that it has superficial appeal because it's a real fact. Unlike all these alleged patterns based on seeing Mr. Maley on three times at the beginning of August in New Mexico, where they had no idea what his patterns of behavior were then, they certainly didn't know three months later, and any information that they had was dated at that point. The shouts happened right there. But for this court to say that that gives rise to probable cause, this court would have to say that a reasonable law enforcement officer could reasonably believe that when the sons shouted to their mother, they were really shouting to their father. When they shouted towards the double-wide trailer, they really were trying to hide the fact that they were shouting at someone in the travel trailer a foot away. When they shout, they don't identify the person they're talking to, right? They do, Your Honor. They say, and this is not contested. They say, just don't say anything until we get a lawyer. They say, mom, don't say anything until we have a lawyer. His mom even there? His mom was not there. It turns out that mom isn't there. So he was born as a hedge, tipping off his father when his mother wasn't there. But he says, mom, because it would look really, really dumb to say, dad, the police are here looking for you. My intent is to supplement the record with a photograph from the trial in this case that shows how very close the travel trailer and the double-wide were and how small this property was. The idea that 12 or more police officers from multiple jurisdictions and multiple vehicles could descend upon this location, take the two sons into custody, have an oral disagreement with them about whether they should comply, ask if the dad is there and have them say no. And someone hiding in that travel trailer wouldn't know that the police were there and that you would actually have to warn someone to hide. I don't think that that is a credible thing. And interestingly, agent AC didn't even note that this happened in his police report. The only officer who did note it, noted it and testified that he was worried that someone might be in the double. No one at the time said anything that they thought that this was an indication that Mr. Mailey was on the property. And I understand this as an objective analysis, not a subjective one, but that's still important because this is a fact that's being drawn out of a record by the government years later, because they really don't have anything else. Mr. Mailey, the government didn't know, excuse me, the investigators didn't know he existed until August 1st. They saw him twice, August 1st and 2nd, very, very early in the morning. Once it was so early that agent AC didn't even think that a human being would be awake in the entire trailer park. The third time they saw him was August 6th away from his trailer park in a vehicle that was not on the property in Arizona. They had no explanation for where that car might be. They had never seen Mr. Mailey in Arizona. They knew nothing about his patterns of behavior. The government has to fall back on things like, well, the curtains were closed this time and they were also closed three months earlier. Please ignore the fact that three months earlier, someone answered the door when we knocked and all or when, when someone knocked and also they moved the curtain out of the way to look out. That's somehow a pattern of behavior that the government can rely on to show that there was probable cause that shows how very weak the government's evidence is here. It doesn't rise to the level of that would, that would qualify as reason to believe under 10th circuit law. And it certainly doesn't qualify under the ninth circuits probable cause standard. And for the performance prong, again, the government has pointed to no court that has ever okayed the prejudicial failure to file a motion to suppress. Um, and the attorneys here did not know the basic details of the search. They couldn't make a strategic decision not to file pursuing a prick prejudice, excuse me, pursuing a meritorious motion to suppress before trial is costless as far as the sixth amendment is concerned because the lawyers here did not need to choose between two competing strategies. All they had to do. Is there some other, um, testimony at trial that would have, um, uh, been the basis for the firearms charge. So even if the evidence here had been suppressed, you know, the plain, the plain view evidence that there, there still might be a basis for the conviction on, on the firearms. You're under the problem would be is that, um, if they have no firearms, which is our argument of what the result of this motion to suppress would be, they're left with the testimony of a young woman who says I saw him with guns in the state of New Mexico. And that doesn't satisfy the elements of a nine 22 G charge. In this case, the government even dismissed one of the charged firearms from the case because they couldn't trace its origin and couldn't show interstate nexus. So without the guns, they would not be able to prove this beyond a reasonable doubt. And the government does not argue otherwise. Um, the, the lawyers here didn't need to choose between two competing strategies. Um, they just needed to file a pretrial motion. They needed to do their work, even though they thought that they were going to be excused from the case. Uh, if there's no further questions, I'd like to reserve the remainder of my time. Thank you, council. We appreciate that. Um, let's hear from the government. Morning and may it please the court. My name is Steven white and I represent the United States. This case illustrates the exact purpose of probable cause, which is on one hand to protect individuals from unreasonable invasions of their privacy, but also, and just as important to give law enforcement officers fair leeway to engage in their law enforcement duties, that fairly way, not only protects, but actually endorses what the officers did in entering Mr. Mailey's travel trailer. First, as judge Kelly noted, they had the shouting from the sons to another person on the property. And even Tyler Mailey, Mr. Mailey's son testified at the suppression hearing in Arizona that yeah, we thought my mom was there. So we were shouting to somebody. And if even Mr. Mailey's sons acknowledged they were thinking they were shouting to somebody, even Mr. Even the officers, excuse me, agent AC included could say that, Hey, we think that he is trying to warn Mr. Mailey himself, especially because the sons were acting disruptively. They were self admittedly said that they were noncompliant with the officers. They knew that, um, the officers knew that Mr. Mailey had engaged in a meth deal at that travel trailer previously. And as this court actually noted in Anderson versus Campbell, um, the actual officers were not in that case, obligated to accept on faith the assertion of the suspect's father, that the suspect was not there. And that same reasoning applies here that, Hey, just because even if they were saying mom, once the officers go and check the RV and see that mom isn't there, they don't have an obligation to just throw that information away and not check the trailer. Is it your position that the shouts of the sons standing alone is enough to show probable cause to enter the home? Yes, your honor. I do think that standing alone would be enough, but I also think that there are additional factors that the officers would have known about as well. Most notably,  why don't they just do that problem solved? Excuse me, your honor. Can you repeat that? They have probable cause for a search warrant. So I think that even if they did have probable cause for a search warrant, they still have the arrest warrant and the arrest warrant does give them the basis to look for Mr. Mailey. And especially in a, in a context where yes, there's many law enforcement officers there, but they're not sure if anybody else is on the property as the shouting indicates or they think somebody else is on the property as the shouting indicates, but they don't know where they would be. So they're checking. They were trying to act quickly is, is more or less what it would come down to. And especially because the, the pickup truck was there as well. That pickup truck had a towing package on it. And that suggests that Mr. Mailey had used that truck as his personal vehicle because officers knew that Mr. Mailey owned the travel trailer and lived in the travel trailer. But there'd never been any, they'd never seen Mr. Mailey in that pickup truck, right? That's correct, your honor. They had never seen him in there according to the record. The only car that they had associated with him was not there. The olive green Range Rover. They had seen him as a passenger in correct, but they had not seen him driving it. And the only person at least as of November 17th that they had seen driving it was Sarah stone stone street. So they could say that, Hey, Mr. Mailey might be a passenger in that other vehicle, but this truck given its characteristics looked like it would belong to Mr. Mailey himself. The officers also knew that Mr. Mailey was unemployed at this point. And as this court noted in Denson, as then judge Gorsuch noted circumstances of employment, at least suggest that eliminate one possibility or strongly suggest that the job and officers, in addition to that, what, as, as Mr. Mailey himself even noted previously, they had had three previous interactions with him. True. It was earlier. One was on August 1st, one was on August 2nd and one was on August 6th at the Peddler's pavilion, but they weren't operating from a blank slate. They had at least two instances in the morning where Mr. Mailey was at his travel trailer. And the one time that they didn't see him at his travel trailer was in the afternoon. So he's aware of away from that. I mean, in those, I mean, those instances were, were months earlier in a different state, right? Correct. Your honor. That's correct. And so that's why we would say, if it was just that those interactions standing alone, that would not be enough for probable cause or even the, the something less that this circuit applies. It's that, that those previous encounters in combination with the pickup truck in combination with the lack of employment, in combination with the sun shouting in combination with officers had no other reasonable addresses where they think Mr. Mailey would be in combination with the fact that two days earlier they had done the statewide takedown. So they can. Well the statewide takedown. Okay. I think you admit in your brief that not a single, that not a single person arrested during that takedown had any association with Mr. Mailey. That's correct. Your honor. That is correct. How does that help you? So as agent AC testifies at the suppression hearing, he says that it's a statewide takedown in Las Cruces, Albuquerque and Alamogordo and true. Only three meth related arrests were made in the Las Cruces area, Deming El Paso, et cetera on that day. But 16 other drug related defendants were arrested that day as well as however many people were arrested in Albuquerque or Alamogordo point being that there was a very, very large operation to arrest multiple people on November 15th. So officers assume that, that that Mr. Mailey would somehow know about that. I think it would be reasonable for officers to assume that a person in the drug trade would keep tabs on massive arrests or at least hear about massive arrest in the drug trade. But you're correct. When you say massive arrest, how many we're talking? I thought it was around a dozen. Yeah. They said a couple dozen. So a couple dozen, but at least an atypical amount for a typical day is what we would say. But even if your honor, even if you don't find that persuasive, it's the combination of the other facts that the shouting in particular, the truck, I guess I don't find it persuasive because there's a more obvious reason why he left town. He, he finished his supervised release obligations and was able to move to where his wife was. Certainly your honor. And that could have been the actual reason, but law enforcement officers were not unreasonable from their perspective for thinking that he might be a fugitive in light of all of these circumstances. Even if this court though, were to believe that emotion to suppress would have been meritorious. It still leaves the question of the second Strickland prong, which is whether Mr. Maley's trial attorneys were actually completely unreasonable in their actions and not merely wrong. And as you noted, judge McHugh, this is a very close call at best absolute best. And that's even, that's even assuming that emotion to suppress would have succeeded to federal judges. In this case, the, the magistrate judge below judge Colson, and the district court judge, judge Brack, both agreed that probable cause existed. So in no way was this a very clear suppression issue such as the officers entering a law abiding citizens house without an arrest warrant for no reason whatsoever. It was a very close call at the absolute best. And even Mr. Maley's trial attorneys at the trial itself, they say, Hey, we recognize officers were allowed to be there because they had an arrest warrant. We think this was constitutional. I'm just concerned about everything past that stage that the regarding the seizure and the forfeiture and was anything else not in plain view. And that's where some of the alleged confusion arises, but there's no indication that they were ever confused about the arrest warrant itself and their their ability to, to enter the travel trailer constitutionally. I mean, I, I see some confusion in the transcript. They seem to assume that once you have an arrest warrant, you're free to enter. I mean, they didn't seem to be focused on whether there was probable cause at all. It was almost like, well, you had an arrest warrant, so obviously you could enter is how I read that transcript. And they also didn't seem to be particularly familiar with the facts of the case. It's difficult to ascertain just what they knew about the, the patent standard itself. But I would suggest that in light of how different the New Mexico case, how much broader it was than the later Arizona case, the lawyers had much more pressing ground to cover in the sense of obviously we would never diminish the importance of a charge, but when you have these other charges that even those, the lawyers themselves acknowledged are virtually indefensible against Mr. Mailey, you're, you're trying to think of good ways to parry those additional charges and thinking, Hey, what, what's the benefit of really hammering down on this travel trailer incident when we have much else to cover anyway. So just taking that, that view of everything in combination, the lawyers here were not a constitutionally ineffective. They, at most they were just merely wrong in that decision. But again, that even assumes that the, the motion to suppress would have succeeded in the first instance. If this panel has, Why were they chasing charges in Arizona? You know, your honor, I simply do not know. I wish I had a better answer, but I just don't know based on the record. If this panel has no further questions, I'm happy to receive the remainder of my time. All right. Thank you. Counsel. Thank you. Your honors. There are a couple of things that I think I've never heard before right now and are not on the record that there was at the takedown involved all Magordo Albuquerque, non meth related cases and 16 other related arrests. I I'm not, I could have missed it, but I did not see that anywhere on the record. The government sites to Anderson versus Campbell for the idea that you don't have to believe someone when they say the person you're looking for is not inside. And that's true. But that case also involved the police seeing a person inside who could have easily been mistaken for the person they were looking for in terms of race, height, and weight. And the idea that they didn't get a search warrant because they didn't, they were trying to act quickly. They planned this particular raid for days. They didn't think they needed an additional warrant because they thought they could go in and forfeit the trailer. Even if Mr. Mailey wasn't there. They also, again, in terms of their knowledge of his patterns and behavior and whether he was employed, they knew what the state records had to say, but they hadn't set eyes on him in three months. They didn't know what he was doing. They hadn't even realized that he left the state months earlier, not because he was a fugitive, but because he had gotten off parole in a state that he had no other ties to. We would ask this court to reverse. Thank you. Thank you, counsel. We appreciate the arguments. Your excuse in the case shall be submitted.